## IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| THERESA SIMONIN, | ) | Civil Action No. 3:10-2808-JFA-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, <u>et seq.</u>, DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

### ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB and SSI on February 6, 2003, alleging disability as of September 11, 2001. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 10, 2004, at which Plaintiff and a vocational expert ("VE") appeared and testified. In a decision dated May 27, 2005, the ALJ found that Plaintiff was not disabled and denied benefits concluding that work existed in the national economy which Plaintiff could perform. On February 9, 2006, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. Plaintiff then filed an action (C/A No. 3:06-1083-JRM) in the United States District Court on April 7, 2006.

After review of that case, the undersigned determined that the Commissioner's decision was not supported by substantial evidence, and the case was remanded to the Commissioner to consider medical records submitted to the Appeals Council. See Order filed September 19, 2007.

On remand, a hearing was held before the ALJ on February 7, 2008, at which Plaintiff appeared and testified. On March 28, 2008, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a VE, concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-five years old at the time of her alleged onset of disability and fifty-two years old at the time of the ALJ's decision. She has a high school education (GED) and a two-year technical degree in health sciences (Tr. 68, 226-227), with past relevant work as a sales associate. Plaintiff alleges disability due to fibromyalgia and depression.

The ALJ found (Tr. 274-283):

1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2.    The claimant has not engaged in substantial gainful activity since September 11, 2001, the alleged onset date (20 CFR 404.1520(c) and 416.920(c)).

3.    The claimant has the following severe combination of impairments: fibromyalgia and depression (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: sit, stand, and walk each for 6 hours of an 8-hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; never climb, crawl, or be exposed to hazards/temperature extremes. She would also require a sit/stand option at will and would be limited to low-

stress work (defined as only occasional decision-making and changes in the work setting).

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on May 27, 1956 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from September 11, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On September 2, 2010, the Appeals Council considered Plaintiff's letter of exceptions, but did not find that the ALJ erred in following the instructions in this Court's September 19, 2007 order. The Appeals Council also noted that the ALJ's decision was supported by substantial evidence. Tr. 256-259. The ALJ's decision is the final decision of the Commissioner after remand from the District Court. Plaintiff filed this action in the United States District Court on October 29, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C.

§§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL RECORD

On June 6, 2000, Plaintiff was diagnosed with hepatitis C. Tr. 119. Plaintiff was treated at Berkeley Family Practice for various ailments (including vomiting, headaches, and diarrhea in February 2001 and body aches and hip pain in November 2001) from March 2000 to March 2003. Tr. 101-118. On July 21, 2001, Plaintiff was treated in the emergency room for acute vomiting and diarrhea. She was given intravenous saline, prescribed medication, and released. Tr. 86-88.

Plaintiff's hepatitis was followed by Dr. J. Gregory Thomas, from September 2001 to July 2003. Tr. 150-158. On September 12, 2001, Dr. Thomas noted that Plaintiff's recent liver panel was normal. Physical examination was unremarkable and Plaintiff denied any other medical problems, complaints, or complications. Dr. Thomas assessed hepatitis C and indicated that he might treat Plaintiff with Interferon at some point in the future. Tr. 155-156. On January 4, 2002, Dr. Thomas indicated that he would withhold treatment for Plaintiff's hepatitis C until Plaintiff's fibromyalgia was under better control. Tr. 154. On September 3, 2002, Dr. Thomas wrote that Plaintiff had a very low viral load and almost normal transaminase levels. Tr. 153. Dr. Thomas noted that Plaintiff had normal liver enzymes and a barely detectable hepatitis C viral load on December 18, 2002. Plaintiff complained of a high level of anxiety related to caring for her son, who was undergoing Interferon treatment for hepatitis C. Dr. Thomas assessed that Plaintiff had hepatitis C, chronic pain,

fibromyalgia, and chronic anxiety. Tr. 152. On April 1, 2003, Dr. Thomas noted that Plaintiff continued to have normal liver enzymes and a barely detectable hepatitis C viral load. Tr. 151. Her condition was unchanged at a follow-up visit in July 2003. Tr. 150.

Dr. J. Grant Taylor, a rheumatologist, began treating Plaintiff in November 2001. Plaintiff complained about muscular and joint pain, and morning stiffness. She reported an onset of diffuse pain two months earlier in her hips, knees, shoulders, low back, and elbows, which worsened with activity. Plaintiff reported some pain relief with Tylenol, Soma, and Ultram. She also complained of episodic nausea, depression, agitation, and sleep problems. Dr. Taylor noted that Plaintiff had diffuse tenderness over her back and joints, but she retained full range of motion in all joints, brisk reflexes, normal strength, and normal sensation. Dr. Taylor diagnosed fibromyalgia, and indicated that Plaintiff's hepatitis was not likely the cause of her symptoms. He recommended that Plaintiff start an exercise program and refilled her medications. Tr. 145-149. On December 17, 2001, Plaintiff complained of worsening pain and an inability to sleep more than two hours at a time. She denied any joint swelling and stated that her medication was no longer working. Plaintiff reported that she was unemployed and was experiencing financial difficulties. Dr. Taylor diagnosed fibromyalgia and depression and added Darvocet and Ambien to her medications. Tr. 140-141.

On March 20, 2002, Plaintiff told Dr. Taylor that she had recently obtained a job as a bookkeeper at a bar. She stated she had a week-long episode of vomiting, which spontaneously resolved. Plaintiff reported that she had discontinued exercising, her stress level had improved, she did not have any joint swelling, and she had ongoing pain. Tr. 135-136. On May 3, 2002, Plaintiff reported to Dr. Taylor that she had been fired from her job and had full-time custody of her two-year-old grandson. Dr. Taylor noted that Plaintiff complained of intermittent aches and pains,

but from a musculoskeletal standpoint she seemed to be doing okay. Plaintiff indicated that her pain level was low, she tolerated her medications well, and she slept well. Dr. Taylor opined that Plaintiff's fibromyalgia was stable on medication. Tr. 133. On July 1, 2002, Dr. Taylor noted that Plaintiff's health had improved since her last visit, and that she denied any radicular symptoms, prolonged stiffness, or joint swelling. Plaintiff reported that she was still caring for her young grandson, remained unemployed, and had recently moved in with her boyfriend. Dr. Taylor opined that Plaintiff's fibromyalgia and hepatitis C were stable. Tr. 131. On September 4, 2002, Plaintiff reported that she was doing fairly well and was actively applying for a job at a photography studio. Tr. 129. On October 23, 2002, Plaintiff complained of worsening diffuse pain after her medications ran out. She also reported that she spent hours each day looking for work. Tr. 127.

Plaintiff reported ongoing pain, worsened anxiety, and frequent muscle spasms on January 6, 2003. Dr. Taylor prescribed Lexapro for anxiety. Tr. 125. On March 12, 2003, Plaintiff complained of continued pain, but reported that her mood and anxiety had improved. Dr. Taylor noted that Plaintiff's fibromyalgia was stable and her anxiety was improved with Lexapro. Tr. 123. On June 23, 2003, Plaintiff reported that she was sleeping poorly, she had run out of Soma two to three days previously, and a chiropractor provided some relief with massage. Dr. Taylor noted that Plaintiff was diffusely tender over her neck and shoulders. He assessed that Plaintiff's fibromyalgia was stable, refilled Plaintiff's medications, and arranged a referral to another rheumatologist, as he was closing his practice. Tr. 122.

On August 13, 2003, Dr. Herbert Gorod, a State agency psychiatrist, reviewed Plaintiff's records and opined that her affective and anxiety disorders were not severe, in that they produced

mild limitations in her activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of decompensation.  Tr. 163-176.

Plaintiff began treatment with Dr. Gregory W. Niemer, a rheumatologist, on September 9, 2003.  Dr. Niemer noted that Plaintiff had a "long history of fibromyalgia, along with osteoarthritis of the right hip and hepatitis C."  Mild pain with hip motion and multiple trigger points were found on physical examination.  Dr. Niemer opined that Plaintiff's symptoms were from fibromyalgia and there was no evidence of active arthritis.  He noted that Plaintiff had responded well to Neurontin and increased her dosage.  Tr. 184.  Dr. Niemer examined Plaintiff again on October 3, October 14, November 13, and December 12, 2003.  Tr. 177-181, 191-193.

On January 14, 2004, State agency physician Dr. W. Cain reviewed Plaintiff's records and assessed her physical residual functional capacity ("RFC").  He opined that she could lift fifty pounds occasionally, lift twenty-five pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  No other limitations were noted.  Tr. 93-100.

On April 4, 2004, Dr. Niemer completed an affidavit in which he opined that Plaintiff was "disabled as a result of her medical conditions in that her condition is the same or just as severe as the following listing(s): 4.11 [and] 4.12[.]" Tr. 193.[1]  Additional records from Dr. Niemer indicate that he treated her approximately once every two months during 2004 and 2005.  See Tr. 593-607.  A sleep study indicated that Plaintiff had abnormally low amount of REM and deep sleep, of

---

[1]The Listing of Impairments ("Listings") refer to impairments listed in the Commissioner's regulations at 20 C.F.R. Pt. 404, Subpt. P, App. 1, which, when met or equaled, are considered presumptively disabling.  Plaintiff has not challenged the ALJ's finding that Plaintiff did not meet or equal one of the Listings.

unknown cause, but that she was taking many sedating medications which were a potential cause. Tr. 207.

On July 6, 2005, Dr. Niemer completed a form titled "Attending Physician's Statement" in which he opined that Plaintiff could lift and/or carry up to ten pounds occasionally and up to five pounds frequently, could sit for only three hours in an eight-hour workday, and could stand and/or walk for only one hour in an eight-hour workday. He also opined that Plaintiff should avoid dust, fumes, gases, extremes of temperatures, humidity, and other environmental pollutants; could never bend or stoop; could rarely push, pull, climb, balance, perform fine manipulation, or reach; and could occasionally perform gross manipulations, operate a motor vehicle, and work with and around hazardous machinery. Dr. Niemer also thought that Plaintiff would be absent from work more than four days per month. Tr. 202.

In December 2005, Dr. Niemer completed an Attending Physician's Statement, in which he opined that Plaintiff could lift up to five pounds occasionally and one pound frequently; sit for three hours and stand/walk for one hour per eight-hour workday; needed to avoid dust, fumes, gases, and extremes of temperature and humidity; could never bend, stoop or climb; could rarely push, pull, use fine manipulation, reach, and work around hazardous machinery; and occasionally could do gross manipulation and operate motor vehicles. Tr. 574.

Additionally, treatment notes indicate that Dr. Niemer continued to treat Plaintiff approximately once every two months from January 2006 to November 2007. Tr. 471-511, 555-559. On January 26 2006, Dr. Niemer opined that Plaintiff was completely disabled due to symptoms caused by fibromyalgia, osteoarthritis of her hips, chronic insomnia, and depression. Tr. 575.

On January 26, 2006, Dr. Marcus Shaeffer examined Plaintiff and noted that Plaintiff complained of fibromyalgia and depression. Plaintiff reported that she was able to drive, take care of her personal needs, cook, wash dishes, and do laundry. Examination revealed tenderness in her abdomen, sixty percent range of motion in her lumbar spine, and full range of motion of her upper extremities. Plaintiff was able to get on and off the examination table, squat, heel and toe walk, and walk fifty feet without any apparent problem. Dr. Schaeffer assessed fibromyalgia and recommended that Plaintiff be limited to light or sedentary work. Tr. 576-580.

In February 8, 2006, Dr. George Chandler, a State agency physician, reviewed Plaintiff's records. He opined that Plaintiff could lift, carry, push, and pull fifty pounds occasionally and twenty-five pounds frequently; sit for about six hours in an eight-hour workday; walk for about six hours in an eight-hour workday; frequently perform all postural activities; and had no visual, communicative, manipulative, or environmental limitations. Tr. 581-588. On February 13, 2006, Dr. Mark Williams, a State agency psychologist, reviewed Plaintiff's medical records and opined that she did not have a severe medical impairment and no more than mild mental functional limitations. Tr. 560-573.

On July 13, 2006, Dr. Joseph Gonzalez, a State agency physician, reviewed Plaintiff's medical records and assessed her physical RFC to perform work. He opined that Plaintiff could lift, carry, push, and pull fifty pounds occasionally and twenty-five pounds frequently; sit for about six hours in an eight-hour workday; walk and stand about six hours in an eight-hour workday; frequently perform all postural activities, except she could occasionally balance; and she had no visual communicative, manipulative, or environmental limitations. Tr. 512-519. Dr. Judith Von, a State

agency psychologist, reviewed Plaintiff's medical records on July 12, 2006. Dr. Von concluded that Plaintiff did not have a severe mental impairment. Tr. 520-533.

On January 29, 2008, Dr. Niemer completed an Attending Physician's Statement in which he opined that Plaintiff could lift up to five pounds occasionally and one pound frequently, and sit three hours and stand/walk one hour per eight-hour workday. He thought she needed to avoid dust, fumes, gases, and extremes of temperature and humidity. Tr. 470. Dr. Niemer opined that Plaintiff could never climb, balance, bend, or stoop; rarely push, pull, use fine manipulation, reach, use gross manipulation, and work around hazardous machinery; and occasionally operate motor vehicles. He also thought that Plaintiff would be absent from work more than four days per month. Tr. 470.[2]

### HEARING TESTIMONY/OTHER EVIDENCE

In July 2003, Plaintiff told an Agency disability examiner that she had taken antidepressant medication for several years, but never had seen a mental health specialist. She reported she was able to drive, did household chores, and read a lot. She said her hepatitis was not giving her any problems. Tr. 83.

At the first hearing before the ALJ (June 2004), Plaintiff stated that in September 2001 she was supposed to start a new job where she could work from home, but was later told that she had to

---

[2]The Commissioner's brief contains a section discussing medical evidence presented to the Appeals Council. This references page numbers that are not contained in the transcript and cites incorrect page numbers for the Appeals Council's determination that there was no reason to assume jurisdiction. Plaintiff has not discussed this in her brief or reply brief. There is no indication of additional medical evidence in Plaintiff's letter of exceptions (Tr. 260-268) or the Appeals Council's September 2, 2010 letter finding no reason to assume jurisdiction (Tr. 256-259). Thus, the undersigned believes this to be a clerical error and has not considered the "Evidence Presented to the Appeals Council" section (p. 12) of the Commissioner's Brief in preparing this report and recommendation.

be in the office for eight hours per day, which she did not feel she could work. She testified that since September 2001, she had not performed any work, but had applied for jobs. Tr. 227-228, 245. Plaintiff testified that she experienced radiating pain, fatigue, vomiting, diarrhea, hepatitis C, depression, seizures, daily dizzy spells, anxiety, hypertension, blurred vision, memory and concentration problems, and poor sleep. Tr. 229, 231, 233, 234, 236-237, 240, 247. She indicated that she had diarrhea every day and vomited once per month. Tr. 241. Plaintiff complained that fibromyalgia affected her entire body and that she sometimes had difficulty grasping objects. Tr. 243.

Plaintiff thought that she could sit for fifteen minutes at a time and reported she limped when she walked. She stated that she did not read much because she had a hard time with comprehension. Plaintiff testified that she attended church once a month. Tr. 238. She said she no longer drove a car due to anxiety and medication side effects. Tr. 230-231. Plaintiff testified that her grandson lived with her from his birth in February 2001 until July 2002, and she cared for her teenage son (who had flu-like symptoms from hepatitis C), until July 2003. Tr. 243. Plaintiff said that friends visited her approximately once a week and she had not had a significant other since September 2001. Tr. 244-245.

At the second hearing before the ALJ (February 2008), Plaintiff stated she was fifty-one years old and married. Tr. 819. She had custody of and cared for her grandchildren, ages eighteen months and three and one-half years. Tr. 820. Plaintiff said she had some help caring for the grandchildren and cleaning her house. Tr. 824. She said she worked part-time from March 2006 to July 2007, answering phones for a company and earning approximately five hundred dollars per month. Tr. 821-822. She said she stopped working because her employer wanted her to expand her work duties. Tr.

822. Plaintiff reported that she was having memory problems that hindered her ability to do bookkeeping, but it did not affect her ability to answer phones. Tr. 823.

Plaintiff said she had one to two good days a week (implying that the other five to six were bad days). Tr. 824. She estimated she could sit for forty-five minutes to one hour at one time and stand fifteen minutes at one time on a good day. Tr. 826. She was able to walk more than one block, could walk about ten minutes at one time, and could lift five pounds. Plaintiff said she could not bend at the waist and stoop, but could climb a stepladder and a flight of stairs (if she held the rail). Tr. 827. She said she could do some housework on her good days. Tr. 831. Plaintiff spent most of her time watching television, belonged to a church, did not attend church services very often, and took a two-hour nap every day. Tr. 831-832.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ erred by failing to follow the proper legal standards for evaluating the diagnosis and disabling effects of her fibromyalgia syndrome; (2) the ALJ erred by disregarding the opinion of her treating rheumatologist that her RFC would preclude her from engaging in substantial gainful employment; and (3) the ALJ's decision is not supported by competent substantial evidence. She also appears to allege that the ALJ's credibility finding is not supported by substantial evidence. The Commissioner contends that substantial evidence[3] supports

---

[3]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established

(continued...)

the Commissioner's final decision that Plaintiff was not disabled within the meaning of the Social Security Act.[4]

    A.    <u>Evaluation of Fibromyalgia/Credibility/Substantial Evidence</u>

Plaintiff appears to allege that the ALJ failed to properly evaluate her fibromyalgia by discounting her credibility based on a lack of objective medical findings. She argues that the ALJ erred in discounting her credibility based on her daily activities because such activities are not indicative of an ability to perform full-time work. Plaintiff also argues that the ALJ erred by failing to take into account the side-effects of her medications. The Commissioner argues that the ALJ properly evaluated Plaintiff's fibromyalgia and did not rely exclusively on the normal objective findings. Specifically, the Commissioner argues that the ALJ properly discounted Plaintiff's claims that her fibromyalgia made her completely disabled from working based on her extensive daily activities and inconsistencies in the record. The Commissioner argues that the ALJ did not err as to Plaintiff's medication side effects as the record indicates that they were not so limiting as to preclude all substantial gainful activity.

The ALJ's determination that Plaintiff's impairments limited her ability to perform more than a reduced range of light work is supported by substantial evidence and correct under controlling law. Fibromyalgia was specifically found by the ALJ to be a severe impairment that limited Plaintiff's RFC. <u>See</u> Tr. 274, 278. A diagnosis of fibromyalgia, however, is not disabling <u>per se</u>. <u>See</u>, <u>e.g.</u>,

_____

[3](...continued)
exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

    [4]In her reply brief, Plaintiff requests oral argument. The undersigned has reviewed the record and finds no need for oral argument as the facts and legal contentions are adequately presented in the parties' briefs and the record and argument would not aid the decisional process.

Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996)(noting that, although some people suffering from fibromyalgia may be totally disabled, most people inflicted with the disease are not disabled).[5]  The ALJ specifically acknowledged that Plaintiff complained of diffuse tenderness and examination confirmed multiple trigger points.  He also, however, noted that Plaintiff's examination consistently revealed full range of motion of the joints and no synovitis; Dr. Taylor noted that Plaintiff's fibromyalgia was stable in May 2002 with her pain level lower than he had ever seen it; and Plaintiff routinely denied joint swelling, radicular symptoms, or prolonged morning stiffness to Dr. Taylor.  Tr. 278.  The ALJ noted that he also did not find Plaintiff's impairment as limiting as she alleged based on Dr. Schaeffer's examination that revealed Plaintiff was able to get on and off the examination table, had full range of motion in her upper extremities, could squat/rise, could heel/toe walk, had no soft tissue swelling, and had sixty percent range of motion of her lumbar spine.  Tr. 278.

In addition, the ALJ discounted Plaintiff's subjective symptoms based on his findings concerning her credibility. In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76

---

[5]In Sarchet, the Seventh Circuit noted:
[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptoms that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.
Sarchet v. Chater, 78 F.3d at 306.

F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. At step one, the ALJ specifically found that Plaintiff had medically determinable impairments that could have reasonably been expected to produce some of the alleged symptoms. Tr. 278. At step two, the ALJ properly considered the medical and non-medical evidence in determining that Plaintiff's subjective allegations of limitations were not credible to the extent they were inconsistent with the RFC found by the ALJ. See Tr. 278-282. The medical record, as outlined above, supports the ALJ's findings. The ALJ, however, did not base his credibility determination on the objective medical evidence alone.

The ALJ's decision is also supported by Plaintiff's activities of daily living. See Mastro v. Apfel, 270 F.3d at 179 (claimant's daily activities undermined her subjective complaints). As noted by the ALJ, Plaintiff's daily activities have included doing dishes, washing clothes, grocery shopping, cooking, socializing with friends, sweeping, mopping, vacuuming, driving, and attending church. Tr. 279. Plaintiff has been able to care for her grandchildren. She cared for one grandson from his birth in February 2000 until July 2002. At the second hearing, Plaintiff testified that she had custody

of two other grandchildren (aged eighteen months and three years) since July 2007.  Although Plaintiff testified that she has help from her son's fiancee four or five days (for one to five hours at a time) to care for the grandchildren and to help clean (Tr. 825), this leaves a large amount of time for Plaintiff to care for her grandchildren.  As noted by the ALJ, caring for young children requires a certain degree of lifting, carrying, standing, walking, pushing, pulling, bending, and stooping.  Tr. 279-280. Additionally, the ALJ noted that Plaintiff has not only looked for work, but engaged in work activity since her alleged onset date.  Plaintiff worked as a bookkeeper at a bar in March 2002, was pursuing a job in a photography study in September 2002, was reportedly looking for work in October 2002, and worked part-time for a company answering phones from March 2006 to July 2007. Tr. 280.

The ALJ also considered Plaintiff's alleged side effects from her medications, but discounted them because the medical records did not collaborate her allegations.  Tr. 279.  He further discounted them based on inconsistencies in Plaintiff's credibility compared to the record.  See Mickles v. Shalala, 29 F.3d at 930.  The ALJ noted that Plaintiff's ability to care for her grandchildren, her looking for her work, her extensive activities, and her ability to work part time were inconsistent with her representations regarding her functional limitations.  The ALJ also noted that Plaintiff's testimony concerning her disabling limitations was inconsistent with Dr. Schaeffer's examination.  The ALJ noted that Plaintiff had not been entirely compliant with taking prescribed medications for mental impairments which suggested that the symptoms might not have been as limiting as she alleged. Plaintiff also failed to appear as scheduled for mental health appointments.  The ALJ also found that Plaintiff's complaints at the hearing were significantly more severe than those described to her physicians.

B.    Treating Physician

Plaintiff argues that the ALJ failed to follow the proper legal standard for evaluating her treating physician's opinion and that the reasons the ALJ gave for discounting these opinions are without foundation. She argues that the ALJ's reasoning for discounting Dr. Niemer's opinions "is apparently based on a total misunderstanding or mischaracterization of the nature of fibromyalgia." She argues that the ALJ erred in discounting these opinions based on the absence of objective testing and a lack of objective evidence. Plaintiff argues that the ALJ disregarded Dr. Niemer's opinion in favor of the non-examining physicians and non-specialists. She claims that Dr. Niemer's opinions of Plaintiff's RFC were consistent with the record as a whole including reports of other treating medical sources and Plaintiff's testimony. The Commissioner contends that the ALJ reasonably concluded that Dr. Niemer's opinion as to Plaintiff's functional abilities was entitled to little weight. Specifically, the Commissioner argues that the ALJ properly discounted Dr. Niemer's opinions as they were inconsistent with his treatment notes, his opinions were conclusory, and other evidence in the record does not support Dr. Niemer's assessments. The Commissioner contends that Dr. Niemer based his opinion primarily upon Plaintiff's subjective complaints, Dr. Niemer's opinion was inconsistent with Plaintiff's activities, some of Dr. Niemer's opinions are more vocational opinions than medical opinions and were entitled to little weight, it was reasonable to infer that Plaintiff's presentation of forms to Dr. Niemer asking him to assist in her application for benefits influenced his opinion, and Plaintiff fails to cite evidence in the record that is consistent with Dr. Niemer's opinion that Plaintiff's symptoms prevented her from working.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Niemer's opinions is supported by substantial evidence and correct under controlling law. The ALJ gave specific, acceptable reasons for discounting Dr. Niemer's opinions. See Tr. 280-281. In Dr. Niemer's April 2004 opinion, he opined that Plaintiff was disabled. Tr. 193. This is a conclusory opinion of disability which is not controlling since the issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir.

2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984). Other opinions from Dr. Niemer were check-the-box type forms that were completed at the request of Plaintiff and her legal representative.[6] An ALJ may reject a treating physician's opinion over doubts about the physician's impartiality, particularly since treating physicians can be overly sympathetic to their patients' disability claims. See Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006); Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001).

The ALJ, however, did not discount Dr. Niemer's opinions solely on the above reasons. He further found that Dr. Niemer did not give detailed discussion or rationale as to why he found Plaintiff so limited. Tr. 281. The ALJ also noted that Dr. Niemer's assessments were based primarily on Plaintiff's subjective symptoms, which were properly found not to be fully credible (as discussed above). Additionally, the ALJ found that Dr. Niemer's treatment notes are essentially illegible and do not provide significant support for the conclusions reached in his assessments. Plaintiff appears to argue that Dr. Niemer's treatment notes often noted that Plaintiff had more than the required number of findings of trigger points to support that Plaintiff had fibromyalgia. The ALJ, however, did find that Plaintiff had the severe impairment of fibromyalgia and limited her ability to stand, walk, lift/carry, climb, crawl, be exposed to temperature extremes, (and noted she needed a sit/stand option) as a result of this severe impairment. Tr. 281.

---

[6]Although Plaintiff argues that the forms submitted are not suggestive of disability, these forms appear to assume that the claimant is limited by asking "which of your patient's work activities are limited, and to what extent." See, e.g., Tr. 470.

19

The ALJ also found that Dr. Niemer's opinion was not consistent with the record as a whole. Instead, he gave significant weight to the opinions of the State agency consultants as their opinion were generally consistent with the other evidence of record. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). There is no indication that Dr. Taylor, Plaintiff's other treating rheumatologist, placed any limitations on her ability to work that would prevent her from performing the limited range of light work as found by the ALJ. The ALJ specifically noted that Dr. Taylor assessed Plaintiff's fibromyalgia as stable in May 2002, with her pain level lower than he had ever seen it, and she denied joint swelling, radicular symptoms, or prolonged morning stiffness to Dr. Taylor. See Tr. 278. Additionally, the ALJ's findings are supported by the consultative examination of Dr. Schaeffer.[7]

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a

---

[7]Plaintiff argues that she should be found disabled based on the decision in Boineau v. Barnhart, 378 F.Supp.2d 690 (D.S.C. 2005). In contrast to Boineau, the ALJ here found a number of reasons to discount Dr. Niemer's opinion other than just the opinions of the State agency physicians.

plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.


Joseph R. McCrorey
United States Magistrate Judge

February 27, 2012
Columbia, South Carolina